**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

OSCAR JORGE GONZALEZ,

       Plaintiff,

v.

MIB, LLC,

       Defendant.

Case No.: 1:25-cv-11963-IT

**DEFENDANT MIB, LLC'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant MIB, LLC ("hereinafter "MIB"), through counsel, hereby submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.    INTRODUCTION

Plaintiff's Complaint, and the documents it incorporates by reference,[1] reflect that MIB has reasonable procedures in place to assure maximum possible accuracy, and that MIB followed those procedures in connection with the Plaintiff. Unfortunately, no consumer reporting agency can ensure perfect accuracy, particularly in the face of identity theft. However, MIB follows procedures designed to ensure that it satisfies its duty of care to each consumer.

MIB is member-owned contributory database to protect applicants, insurers, and policyholders from omissions and fraud that interfere with sound and equitable underwriting service for life insurance and other products. MIB collects medical and insurance-related data

---

[1] As explained more fully below, the court can consider documents that Plaintiff relies on in the Complaint, because these documents "merge into the pleadings." *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 34 (1st Cir. 2001). Accordingly, MIB has enclosed the Declaration of Sue Corey ("Corey Decl.") in support of MIB's Motion to Dismiss the Complaint, which attaches the relevant documents described in the Complaint.

1

from its member insurance companies, and it provides reports to its users that contain coded information about the aspects of an applicant's medical history that are relevant to underwriting decisions. In this case, MIB received information from an insurance company, non-party Ameritas Life Insurance Co. ("Ameritas"), indicating that Plaintiff had previously sought or was seeking treatment related to alcohol. *See* Plaintiff's Complaint, Doc. No. 1 ("Compl."), ¶¶ 14, 18, 19. Subsequently, in September 2023, Plaintiff applied to the same non-party life insurance company, Ameritas, for life insurance. Doc. No. 1 at ¶ 12. On September 6, 2023, "Plaintiff's application for life insurance was denied." Doc. No. 1 at ¶ 13.

Plaintiff alleges that he has never sought or received alcohol related treatment, and that he is a victim of identity theft. Doc. No. 1 at ¶¶ 20, 23. Assuming that is true, Plaintiff's Complaint demonstrates that the inaccurate information in his consumer report resulted from this criminal act—identity theft—and was not caused by any failure of MIB to exercise reasonable care. MIB accurately reported the information that it received from its furnishers and removed the information less than a week after receiving Plaintiff's report of identity theft. Doc. No. 1 at ¶¶ 25, 26. Any harm that Plaintiff suffered was caused by the perpetrator of the alleged identity theft, not by MIB.

## II.    BACKGROUND AND FACTS

According to the Complaint, Plaintiff applied for life insurance with non-party Ameritas, in September 2023. Doc. No. 1 at ¶ 12. Ameritas denied Plaintiff's application on or about September 6, 2023. *Id.* ¶ 13. On October 3, 2024, Plaintiff submitted an online request for a free annual disclosure from MIB. *See* Doc. No. 1 at ¶ 15; *see also* Oct. 3, 2024 Request, Doc. No. 16-1 at p.1. On October 4, 2024, MIB sent a request to Ameritas that provided Ameritas with the attributes on the report and requested Ameritas to confirm that "[t]he consumer [listed in the request] is the subject of your MIB report, and [t]he MIB report is documented by [Ameritas']

underwriting file." *See* Doc. No. 1 at ¶ 15; Oct. 4, 2024 Confirmation Request, Doc No. 16-2 at p.1. On October 9, 2024, Ameritas completed and returned the form to MIB with instructions for MIB: "Proceed with disclosure. The requester and the individual on whom the report/s was made are one and the same." *See* Doc. No. 1 at ¶ 15; Ameritas' Response, Doc No. 16-3 at p.1. The form was signed by a Senior Underwriter. *Id.* On the same day, October 9, MIB responded to Plaintiff's request for his consumer file disclosure and provided Plaintiff with his MIB Consumer File as of October 3, 2024. *See* Doc. No. 1 at ¶ 15.

On October 17, 2024, MIB received Plaintiff's request for reinvestigation that contained the following description of dispute: "There is a report that is absolutely incorrect on my file. It says on 09/03/2023 I sought treatment for Alcohol and that is no where near true I moved back to NJ 04/2023 and had not seen any doctor which was Dept. Of Labor appointed until 08/2024. I would like to know who reported this inaccuracy as it doesn't show on my report." *See* Doc. No. 1 at ¶ 16; Plaintiff's request for reinvestigation, Doc No. 16-4 at p.1.

On October 25, 2024, Ameritas sent Plaintiff a letter informing Plaintiff that MIB submitted a reinvestigation request to Ameritas since it was the furnisher of the information in dispute. *See* Doc. No. 1 at ¶¶ 18, 19; Ameritas' reinvestigation results, Doc No. 16-5 at p.1. The letter informed Plaintiff that "the coding [Ameritas] reported to MIB was per a 12/14/2022 office visit [Plaintiff] had with Rafael Yaakobov, NP . . . during which [Plaintiff] informed [his] healthcare provider of [his] alcohol use." *See* Doc. No. 1 at ¶ 19; Doc No. 16-5 at p.1. The letter informed Plaintiff that Ameritas "confirmed that based on the medical information obtained in [Plaintiff's] records from Rafael Yaakobov, NP, [its] MIB coding was correct." *Id.* The letter also said, "We have concluded that the codes reported to MIB were accurate and complete. Therefore, no changes will be reported to MIB." *Id.*

On January 7, 2025, Plaintiff sent a letter to MIB's Disclosure Office stating that Plaintiff never saw provider Rafael Yaakobov, has never been to the address listed on the visit, and has never had issues with alcoholism.  *See* Doc. No. 1 at ¶¶ 23, 24; Plaintiff's Jan. 7, 2025 letter, Doc No. 16-6 at p.2.  The letter further stated, "I am not sure if you are getting me mixed up or if this is identity theft so I filed a report with the Federal Trade Commission.  Please understand, this information that you are reporting is NOT accurate."  *Id.* at p.2.  Plaintiff included a screenshot of the identity theft report that he provided to the Federal Trade Commission in the letter.  *Id.* at 2-3.

On the same day, MIB forwarded a copy of Plaintiff's letter to Ameritas and requested Ameritas to "initiate a reinvestigation of the disputed according to the Guide to Reinvestigation in our MIB Primer."  *See* MIB's Jan. 7, 2025 letter, Doc No. 16-7 at p.1.  In this letter to Ameritas, MIB wrote: "WE HAD PREVIOUSLY SENT YOU THIS DISPUTE. THE CONSUMER HAS SENT IN ANOTHER LETTER WITH AN IDENTITY THEFT REPORT."  *Id.*

Six days later, on January 13, 2025, Ameritas sent Plaintiff a letter informing him that MIB initiated a reinvestigation with Ameritas.  *See* Ameritas's Jan. 13, 2025 letter, Doc No. 16-8 at p.1.  The letter informed Plaintiff that Ameritas removed the codes Plaintiff disputed based on the information Plaintiff provided.  *Id.*  On the same day, MIB also sent Plaintiff a letter notifying him that the disputed item was removed from his MIB consumer file.  *See* MIB's Jan. 13, 2025 letter, Doc No. 16-9 at p.1.

### III.    STANDARD OF LAW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  For a claim to be plausible, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . ."  *Id.* at 555.  "Accordingly, 'allegations that merely parrot the relevant legal standard are disregarded.'"  *In re Ariad Pharma.,*

4

*Inc. Sec. Litig.*, 842 F.3d 744, 756 (1st Cir. 2016) (quoting *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 43 (1st Cir. 2013)).

In the First Circuit, when "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged)," the court may consider and rely on it to evaluate a motion to dismiss. *Alt. Energy, Inc.*, 267 F.3d at 34 (1st Cir. 2001) (quoting *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998)); *see also Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) ("courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; . . . for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint"). The court may consider such a document, because it "merges into the pleadings." *Id.* at 33.

## IV.    LEGAL ARGUMENT

### a.    Plaintiff's Complaint Demonstrates that MIB Followed Reasonable Procedures to Assure Maximum Possible Accuracy.

Plaintiff has not plausibly alleged that MIB failed to follow reasonable procedures to assure maximum possible accuracy in connection with Plaintiff's consumer report. A claim of noncompliance with section 1681e(b) "consists of four elements: (1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." *Richardson v. Fleet Bank of Mass.*, 190 F. Supp. 2d 81, 85 (D. Mass. 2001); *see also McIntyre v. RentGrow, Inc.*, 34 F.4th 87, 92-93 (1st Cir. 2022).

With respect to the second element, "[s]ection 1681e(b) mandates that agencies follow reasonable procedures in preparing consumer reports but 'does not impose strict liability for inaccurate entries in consumer reports; the preparer is held only to a duty of reasonable care. The

exercise of reasonable care is determined by reference to what a reasonably prudent person would do under the circumstances.'" *Richardson*, 190 F. Supp. 2d at 85-86 (quoting *Spence v. TRW, Inc.*, 92 F.3d 380, 383 (6th Cir. 1996)).  Plaintiff has the burden of pleading facts to support a plausible inference that the inaccuracy "arose from the defendant's failure to use reasonable procedures to ensure the accuracy of its reports."  *Ortez v. RentGrow, Inc.*, 24-cv-10376-FDS, 2024 WL 4349252, *3 (D. Mass. Sept. 30, 2024).

Plaintiff's Complaint does not allege facts to support the plausible inference that MIB failed to exercise reasonable care by reporting the information it received from Ameritas.  To the contrary, the Complaint and the incorporated documents demonstrate that MIB followed appropriate procedures and undertook to confirm the derogatory information.  The Complaint demonstrates that the furnisher, Ameritas, received the derogatory information about Plaintiff from a particular medical provider, Rafael Yaakobov, based on medical records that the medical provider kept of a visit associated with the Plaintiff on a particular date, December 14, 2022.  *See* Doc. No. 1 at ¶ 19; Doc No. 16-5 at p.1.  Prior to receiving Plaintiff's dispute, MIB submitted a request for Ameritas, as the furnisher of the derogatory information, to confirm that "[t]he consumer [listed in the request] is the subject of your MIB report, and [t]he MIB report is documented by [Ameritas'] underwriting file."[2]  *See* Doc No. 16-2 at p.1.  Ameritas responded in the affirmative and reiterated that it had appropriately linked this information to the Plaintiff's file after receiving Plaintiff's reinvestigation request.  *See* Doc. No. 1 at ¶ 19; Doc No. 16-3 at p.1; Doc No. 16-5 at p.1.

---

[2] Notably, under federal regulations that define the furnisher's duty to establish and implement reasonable procedures, "accuracy" requires that the information "identifies the appropriate consumer," and "integrity" requires that the information "is substantiated by the furnisher's records at the time it is furnished.  12 C.F.R. § 222.41(a).

The Complaint also demonstrates that Plaintiff did not notify MIB about the potential of identity theft until January 7, 2025. *See* Doc. No. 1 at ¶¶ 23, 24; Doc No. 16-6. Upon receiving it, MIB promptly relayed the identity theft claim and accompanying documentation to Ameritas and then deleted the disputed item from his MIB consumer file. *See* Doc. No. 1 at ¶ 25; Doc No. 16-7 at p.1; Doc No. 16-9 at p.1.

Crucially for the present motion, Plaintiff's Complaint does not support the inference that MIB failed to exercise reasonable care in some way that otherwise would have prevented it from reporting the derogatory information about Plaintiff. Rather, the Complaint baldly asserts that (a) "MIB clearly does not have policies and procedures in place to ensure the maximum possible accuracy of the consumer reports it publishes"; and (b) "MIB failed to have policies and procedures to avoid misreporting medical records." Doc. No. 1 at ¶¶ 27, 32. "Such conclusory statements are insufficient to state a claim for negligence." *Pajak v. Rohm & Haas Co.*, 387 F. Supp. 3d 138, 148 (D. Mass. 2019) ("Those allegations are completely devoid of any factual assertions specifying how [the defendant] breached any of their purported duties of care . . . but rather just restate the alleged duty of care in the negative.") Not only are these conclusory allegations insufficient, but, as described above, the facts alleged in the Complaint and reflected in the incorporated documents render them implausible. In other words, Plaintiff has failed to plead facts to support the second element of this claim, and it should be dismissed. *See Richardson*, 190 F. Supp. 2d at 86.

### b. Plaintiff's Complaint Demonstrates that MIB Conducted a Reasonable Reinvestigation of Plaintiff's Dispute.

When a consumer notifies a consumer reporting agency that information contained in his or her credit report may be inaccurate, "shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file." 15 U.S.C. § 1681i(a)(1)(A). "To establish

a claim under Section 1681i, a consumer plaintiff must show that (1) the consumer reporting agency's reinvestigation was unreasonable, (2) the plaintiff 'suffered damages as a result of the inaccurate information,' and (3) a causal relationship exists between the unreasonable reinvestigation and the loss of credit or some other harm." *Barrepski v. Capital One Bank (U.S.A) N.A.*, No. CIV.A. 11-30160-NMG, 2014 WL 935983, at *4 (D. Mass. Mar. 7, 2014) (quoting *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 608 (7th Cir. 2005)).

MIB conducted a reasonable reinvestigation into Plaintiff's disputes. "Courts evaluate the reasonableness of a consumer reporting agency's investigation based on 'what a reasonably prudent person would do under the circumstances.'" *Barrepski*, 2014 WL 935983, at *6 (quoting *Cousin v. Trans Union Corp.*, 246 F.3d 359, 368 (5th Cir. 2001)). "Whether the credit reporting agency has a duty to go beyond the original source will depend, in part, on whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable." *Richardson*, 190 F. Supp.2d at 88 (quoting *Henson v. CSC Credit Services*, 29 F.3d 280, 286 (7th Cir. 1994).

When Plaintiff first contacted MIB regarding the dispute, he explained in essence that he disagreed with the derogatory information, stating that there was a "report that is absolutely incorrect on [his] file." *See* Doc. No. 1 at ¶ 16; Doc No. 16-4 at p.1. In response, the furnisher, Ameritas, verified the accuracy of the information that it provided to MIB, explaining that it had appropriately linked this information to the Plaintiff's file based on medical records from a particular medical provider. *See* Doc. No. 1 at ¶ 19; Doc No. 16-5 at p.1.

Plaintiff did not notify MIB that he was the victim of identity theft until January 7, 2025, after receiving the results of MIB's initial reinvestigation. *See* Doc. No. 1 at ¶¶ 23, 24; Doc No. 16-6 . On the same day, MIB requested Ameritas complete another reinvestigation based on the

identity theft report. *See* Doc No. 16-7 at p.1. Shortly thereafter, Ameritas sent Plaintiff a letter informing him that Ameritas had removed the disputed derogatory information. *See* Doc No. 16-8 at p.1. On the same day, MIB also sent Plaintiff a letter notifying him that the disputed item was removed from his MIB consumer file. *See* Doc No. 16-9 at p.1. In other words, MIB provided Ameritas with all the information it needed to conduct a thorough reinvestigation and corrected the information promptly. As discussed above, Plaintiff's Complaint demonstrates that MIB acted reasonably by conducting a thorough reinvestigation based on Plaintiff's disputes.

Further, Plaintiff cannot establish that MIB inappropriately relied on verification from Ameritas. Plaintiff has failed to allege any facts that would show a reasonably prudent person would not have relied on Ameritas' verification. *See Richardson*, 190 F. Supp.2d at 88 (quoting *Henson v. CSC Credit Services*, 29 F.3d 280, 286 (7th Cir. 1994). Plaintiff's Complaint does not support the inference that MIB should have known Ameritas' re-verification would be unreliable. Therefore, this claim should be dismissed.

## V.    **CONCLUSION**

For the reasons set forth above, Defendant MIB respectfully requests that the Court grant its Motion to Dismiss Plaintiff's Complaint with prejudice, as any amendment would be futile.

Dated: October 29, 2025

Respectfully submitted,

MIB, LLC
By its attorneys,
/s/ *Wayne F. Dennison*
Wayne F. Dennison (BBO # 558879)
Rachel E. Feiden (BBO # 706645)
Brown Rudnick LLP
One Financial Center
Boston, MA 02111
(617) 856-8200
wdennison@brownrudnick.com
rfeiden@brownrudnick.com

9

**<u>CERTIFICATE OF SERVICE</u>**

I Wayne F. Dennison, hereby certify that this document filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on this 29th day of October, 2025.

/s/ *Wayne F. Dennison*
Wayne F. Dennison